**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Kimberly V. Beck,<br><br>                              Plaintiff,<br><br>              -v-<br><br>Metropolitan Bank Holding Corp. and JPMorgan Chase Bank, N.A.,<br><br>                              Defendants. | 2:23-cv-07564<br>(NJC) (ARL) |

## OPINION AND ORDER

Plaintiff Kimberly Beck ("Beck") brings this action against Defendant JPMorgan Chase Bank, N.A. ("Chase") for failing to adopt and implement security procedures reasonably designed to protect her, a customer, from fraudulent wire transfers. (Not. of Removal, Ex. B at 1, ECF No. 1-2 ("Am. Compl.").)[1] Beck initially brought this action in state court, alleging three New York common law claims against Chase and Metropolitan Bank Holding Corporation ("Metropolitan"): (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) negligence. (*Id.* at 6–9.) After Beck and Metropolitan filed a stipulation of discontinuance dismissing the claims against Metropolitan with prejudice, Chase removed the case to this Court on the basis of diversity jurisdiction. (Not. of Removal, Ex. A at 32 ("Stip. of Discontinuance"); Not. of Removal, ECF No. 1.)

Before the Court is Beck's Motion to Remand this action to state court pursuant to 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction. (Mot. to Remand, ECF No. 15.) The

---

[1] Citations to the Amended Complaint will refer to page numbers, rather than paragraph numbers, as the Amended Complaint contains duplicate paragraph numbers. (*See* Am. Compl.)

Motion to Remand asserts that removal was improper because Beck brings only state-law claims and the parties were not completely diverse in their citizenships at the time of removal as required by 28 U.S.C. § 1441(b)(2). (*Id.* at 4.) Chase objects to remand, asserting that complete diversity of the parties existed at the time of removal because Chase is a citizen of a different state than Beck and because Beck had previously voluntarily dismissed the only other defendant, Metropolitan. (Def.'s Mem. in Opp'n of Mot. to Remand ("Opp'n"), ECF No. 16.) For the following reasons, the Court denies the Motion to Remand.

## PROCEDURAL HISTORY

### I.     State Court Verified Complaint and Amended Verified Complaint

On January 29, 2023, Beck filed a verified complaint in the Supreme Court of New York, Suffolk County against Metropolitan and Chase, asserting three New York common law claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) negligence. (Not. of Removal, Ex. A at 3–11 ("Compl.") at 9–11, ECF No. 1-1.)[2] Chase was served with the complaint on July 13, 2023, and Metropolitan was served on July 25, 2023. (Not. of Removal, Ex. A at 16, 20.)

On September 21, 2023, Beck filed an Amended Verified Complaint ("Amended Complaint"). (Am. Compl.) The Amended Complaint names both Chase and Metropolitan, and makes substantively the same allegations and asserts the same three state-law causes of action as the original complaint. (*Id.* at 1, 6–9.) It alleges that Defendants failed to adopt and "implement adequate security procedures reasonably designed to protect [Beck] from being coerced [by third-party actors] into sending [those actors] . . . wire transfers," in violation of each bank's contractual obligations and duty of care to Beck. (*Id.* at 5; *see also id.* at 7–9.) The Amended

---

[2] Citations to pages in the Notice of Removal reference the ECF-generated pagination.

Complaint also alleges that due to these failures, third-party "threat actors" were able to successfully coerce Beck, through threat and deception, into withdrawing $10,000 from her Chase account and sending two wire transfers totaling $59,800 from her Chase account to a Metropolitan bank account held by an unknown third party. (*Id.* at 3–5.)

The Amended Complaint alleges that Beck is a "resident of the State of New York," providing the New York address where Beck currently resides, and that Metropolitan is incorporated in Delaware and maintains it headquarters and principal place of business in New York. (*Id.* at 2.) It further alleges that Chase is incorporated in Delaware and maintains its principal place of business in New York. (*Id.* at 2.)

Beck seeks monetary damages in the amount of $77,800, compensatory and punitive damages for Beck's pain and suffering in the amount of $50,000, and legal fees and costs. (*Id.* at 9.)

## II.    Dismissal of Metropolitan from the State Court Action

On October 5, 2023, Beck filed a stipulation of discontinuance with prejudice as to Metropolitan. (Stip. of Discontinuance.) Attorneys for Beck and Metropolitan signed the stipulation of discontinuance, which did not cite any provision of the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."), but stated that "the above-captioned action . . . hereby is[] *discontinued with prejudice* and without costs to any party as against the other." (*Id.* (emphasis supplied).) The state court record does not show that either Metropolitan or Chase answered the Amended Complaint prior to the dismissal of Metropolitan with prejudice from the action. (*See* Not. of Removal, Ex. A.)

### III.      Removal and Motion to Remand

Almost one week after Metropolitan was dismissed with prejudice from the action, on October 11, 2023, Chase filed a Notice of Removal in this Court pursuant to 28 U.S.C. § 1446(b)(3) and 28 U.S.C. § 1332(a)(1). (*See* Not. of Removal.) The Notice of Removal asserts that the action "may be removed to this Court because there is complete diversity of citizenship between Beck and Chase, and more than $75,000, exclusive of interest and costs, is at stake." (*Id*. ¶ 11.) Chase asserts that it was an Ohio citizen at the time of the filing of the initial complaint and the Amended Complaint because Chase is a national banking association with its main office located in Ohio. (*Id.* ¶ 14.) In support, Chase attached its Certified Articles of Association to the Notice of Removal. (Not. of Removal, Ex. D, ECF No. 1-4.)

On January 19, 2023, Beck filed a Motion to Remand the case to state court, raising two main arguments. (Mot. to Remand.) First, Beck asserts that removal was improper because Metropolitan, a citizen of New York and therefore a non-diverse defendant, had been "properly served and joined" in the state court action and "there has been no court order dismissing Metropolitan Bank from the case" prior to the filing of the Notice of Removal. (*Id.* at 7, 9; *see also id*. 7–11.) Second, Beck argues that, for the purposes of diversity jurisdiction, Chase shares the same citizenship as its "alter ego" and parent company, "JP Morgan Chase Bank Co," which is a citizen of "New York and Delaware." (*Id*. at 11, 13–14.) Accordingly, Beck argues that both Chase and Beck are New York citizens and this Court therefore lacks subject matter jurisdiction over this action under 28 U.S.C. § 1332(a). (*Id*. at 13–14.) Chase filed a Memorandum in Opposition (Opp'n), and Beck filed a Reply (Reply Supp. Remand ("Reply"), ECF No. 18).

On May 21, 2024, the Court issued an Order to Show Cause directing Chase, as the party asserting jurisdiction in this case, to file proof of Beck's domicile. (Elec. Order, May 21, 2024.)

On May 24, 2024, Chase filed a Supplemental Memorandum in Opposition to the Motion to Remand (ECF No. 21), and the Declaration of Tyler Kandel, counsel for Chase (Kandel Decl., ECF No. 21-1). Kandal attests that Beck opened a Chase bank account in trust for a "Michael Beck" in New York in December 2022 and provided a copy of the signature card through which Plaintiff executed that account. (Kandel Decl. ¶ 3; Kandel Decl., Ex A ("Cortese Decl."), Ex 1.) Kandel further affirms that Beck has a New York State driver's license that was issued on August 6, 2018 and that she used that license as her primary form of identification when she executed the two wire transfer agreements at issue in this case on February 17, 2023 and February 18, 2023. (Kandel Decl. ¶¶ 4–5; *see also* Cortese Decl., Ex. 2.) Kandel also conducted a search for public records pertaining to Beck through WestLaw's "PeopleMap" search engine, and the results of that search demonstrated that Beck has maintained continuous New York residences since April 2001. (Kandel Decl. ¶¶ 6–8; Kandel Decl., Ex. B.) Additionally, Kandel attached a voter registration search for Beck which reflects that Beck is registered to vote in New York based on her current New York residence. (Kandel Decl. ¶ 9; Kandel Decl., Ex. C.)

## LEGAL STANDARDS

### I.   Removal Standard

A defendant may remove to federal court "any civil case brought in State court of which [the federal courts] have original jurisdiction," so long as Congress has not expressly prohibited removal. 28 U.S.C. § 1441(a). District courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a) ("Section 1332(a)").

Where the only basis for the district court's subject matter jurisdiction is diversity of citizenship under Section 1332(a), the "forum defendant rule" precludes removal "if any of the

parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) ("Section 1441(b)(2)"); *see also Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704–05 (2d Cir. 2019) (discussing Section 1441(b)(2)'s forum defendant rule).

## II.     Remand Standard

A plaintiff may move to remand a case after it has been removed to federal court, and "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" back to the state court. 28 U.S.C. § 1447(c); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 356 (2d Cir. 2011). "When a case is properly removed based on diversity jurisdiction," however, "the district court may not remand it, as diversity jurisdiction is not discretionary." *Parnoff v. Fireman's Fund Ins. Co.*, 796 F. App'x 6, 9 (2d Cir. 2019) (citing *Carnegie-Mellon Univ. v. Coghill*, 484 U.S. 343, 356, (1988), *superseded on other grounds by* 28 U.S.C. § 1447(c)). The removing party has "the burden of establishing that removal is proper." *Abbo-Bradley v. Cty. of Niagara Falls*, 73 F.4th 143, 148 (2d Cir. 2023). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharm., Inc.*, 943 F.3d 613, 617 (2d Cir. 2019) (citation omitted).

## DISCUSSION

## I.     Forum Defendant Rule

Beck first argues that the removal of this case based on diversity jurisdiction was improper under Section 1441(b)(2)'s forum defendant rule because Metropolitan is a citizen of New York and was properly joined and served before Chase removed the action. (Mot. to

Remand at 7–8.) Beck asserts that the forum defendant rule precluded removal of this action to federal court, notwithstanding the fact that Beck and Metropolitan had already filed a stipulation dismissing the claims against Metropolitan with prejudice, because the state court did not order Metropolitan's dismissal pursuant to N.Y.C.P.L.R. § 3217(b). (*Id.* at 9.) This argument is unavailing because, at the time Chase filed the Notice of Removal, Beck had already voluntarily dismissed her claims against Metropolitan with prejudice under N.Y.C.P.L.R. § 3217(a) by filing the stipulation of discontinuance signed by her and Metropolitan. Under 28 U.S.C. § 1446(b)(3) ("Section 1446(b)(3)"), moreover, Beck's filing of the stipulation of discontinuance served as an "other paper" from which Chase could first discern the action as one that "ha[d] become removable," and Chase properly filed a Notice of Removal within that statute's thirty-day timeframe for doing so. Further, the stipulation of discontinuance was a final dismissal of Metropolitan from the state court action because it was a dismissal "with prejudice."

A.  Legal Standards

When a case is not removable based on the initial pleading, under Section 1446(b)(3):

> a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3). The Second Circuit has adopted "a voluntary-involuntary rule" to determine which cases are removable. *Lopez v. Wells*, No. 07 CIV. 10707 (PKL), 2008 WL 2662018, at *3 (S.D.N.Y. July 7, 2008). As one district court explained:

> [I]f the parties become diverse because a non-diverse defendant is dismissed from the case—as opposed, say, to a party's change in citizenship—then removal becomes possible under appropriate circumstances. The test to determine whether dismissal of a non-diverse defendant permits removal has been articulated in terms of the plaintiff's volition in obtaining the dismissal. If the plaintiff voluntarily dismissed the action against the non-diverse defendant, the case

> becomes removable . . . However, if the non-diverse defendant were dismissed
> from the case on his own motion, against the plaintiff's will, then the case would
> not be removable.

*LGP Gem Ltd. v. Cohen*, 636 F. Supp. 881, 882 (S.D.N.Y. 1986) (citing *Whitcomb v. Smithson*, 175 U.S. 635 (1900)). This distinction between voluntary and involuntary dismissals "protects against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, which would lead to duplication and expense." *Lopez*, 2008 WL 2662018, at *3 n.3 (citing *Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n.2 (2d Cir. 1980)) (quotation marks omitted). "That danger does not arise where a plaintiff voluntarily drops a resident defendant since appeal then is not available, and the elimination of the resident defendant from the case is final." *Id.*

The Second Circuit instructs courts to consider the finality of the dismissal in applying the voluntary-involuntary rule. In *Quinn*, the Second Circuit held that even in the context of an involuntary dismissal of a non-diverse party—one effected by a court order, against the plaintiff's will—removal is proper under Sections 1332(a) and 1446(b) where the "plaintiff[']s[] failure to take an appeal [of the dismissal order] constituted the functional equivalent of a voluntary dismissal." 616 F.2d at 40 n.2 (quotation marks omitted). Applying *Quinn*, some courts have held that the voluntary dismissal of a non-diverse party from a state court action must be final—in other words, a dismissal with prejudice—in order for the case to be removable under Sections 1332(a) and 1446(b). *See, e.g., Lopez*, 2008 WL 2662018, at *3 (applying *Quinn* to hold that a case did not become removable based on diversity jurisdiction where a notice of discontinuance *without* prejudice was filed as to non-diverse defendants "because plaintiff could reinstate the claims against [them] and move for remand"); *Lucerne Cap. Mgmt., LP v. Arch Ins. Co.*, No. 3:23-CV-01129 (VAB), 2023 WL 8117847, at *2 (D. Conn. Nov. 22, 2023) (holding

that removal of an action from Connecticut state court to federal court was permissible because plaintiff voluntarily dismissed the non-diverse defendant from the state court action and that dismissal was final pursuant to a mandatory forum clause in plaintiff's contract with that particular defendant).

In order to determine whether a non-diverse party was subject to a final dismissal from the state court action prior to the filing of the Notice of Removal, this Court turns to state law. The New York Civil Procedure Law and Rules require a defendant to serve an answer or reply within twenty days after service of the pleading to which it responds. N.Y.C.P.L.R. § 3012(a). Under N.Y.C.P.L.R. § 3217(a) ("Section 3217(a)"), a plaintiff may voluntarily dismiss a claim against a defendant without a court order where the plaintiff:

> serv[es] upon all parties to the action a notice of discontinuance at any time before a responsive pleading is served . . . [or] fil[es] with the clerk of the court before the case has been submitted to the court or jury a stipulation in writing signed by the attorneys of record for all parties, provided that no party is an infant, incompetent person for whom a committee has been appointed or conservatee and no person not a party has an interest in the subject matter of the action . . . .

N.Y.C.P.L.R. § 3217(a) (emphasis supplied). "Except as provided in [Section 3217(a)], an action shall not be discontinued by a party asserting a claim except upon order of the court and upon terms and conditions, as the court deems proper." *Id.* § 3217(b). The New York statute governing voluntary dismissals further provides that "[u]nless otherwise stated in the notice, stipulation or order of discontinuance, the discontinuance is without prejudice . . . ." *Id.* § 3217(c).

B.  <u>Application</u>

Here, Beck's voluntary dismissal of its claims against Metropolitan *with prejudice* from

the state court action rendered the case removable to federal court so long as the remaining

parties—Beck and Chase—were diverse.[3]

Beck filed the Amended Complaint in state court on September 21, 2023, which meant

that pursuant to N.Y.C.P.L.R. § 3012(a), Metropolitan's answer was due twenty days later on

October 11, 2023. Before Metropolitan's time to answer the Amended Complaint expired,

however, Beck filed the stipulation of discontinuance with prejudice as to Metropolitan on

October 5, 2023. (Stip. of Discontinuance.) The dismissal of Metropolitan was a final dismissal

from the action because the stipulation was signed by both Beck and Metropolitan and it

explicitly stated that "the above-captioned action . . . hereby is[] discontinued *with prejudice* . . .

." (*Id.* (emphasis supplied).) There is no indication in the record that Metropolitan or Chase had

filed an answer in state court before Beck filed the stipulation of discontinuance with prejudice.

(*See* Not. of Removal, Ex. A.) Therefore, under Section 3217(a), Metropolitan was dismissed

from the state court action upon service of the stipulation of discontinuance with prejudice

because no party had filed a responsive pleading at that time. *See* N.Y.C.P.L.R. § 3217(a)

(providing that "[a]ny party asserting a claim may discontinue it without an order . . . by serving

upon all parties to the action a notice of discontinuance at any time before a responsive pleading

is served . . . .").[4]

---

[3] Beck's second argument for remand is that Chase is a citizen of New York, and thus not
diverse from Beck, because Chase is purportedly an "alter ego" of its parent company, which is a
New York citizen. (Mot. to Remand at 11, 15–16.) This argument is addressed below and is
unpersuasive. *See infra*, Section II ("Citizenship of Defendant Chase").
[4] The stipulation of discontinuance with prejudice was served on all parties on the New York
State Courts electronic filing system, "NYSCEF." (*See* Not. of Removal, Ex. 1 at 32.)

Ignoring the plain text of the applicable N.Y.C.P.L.R. provisions, Beck argues that a court order was required to enact a final dismissal of Metropolitan from the state action. No court order was necessary, however, for Beck to enact a final dismissal of Metropolitan through the filing of the stipulation of discontinuance with prejudice signed by Beck and Metropolitan, the party being dismissed. *See* N.Y.C.P.L.R. § 3217(b) (requiring a court order for dismissal of any party "[e]xcept as provided in [Section 3217(a)]").

In state court, Beck chose to take an action that, under N.Y.C.P.L.R. § 3217(a), resulted in the final dismissal of Metropolitan before Chase filed the Notice of Removal on October 11, 2023. For these reasons, Section 1446(b)(2)'s forum defendant rule did not bar removal of the action to this Court, so long as Chase was not a citizen of New York.

## II.    Citizenship of Defendant Chase

Beck next argues that even without Metropolitan in the action, the parties lack complete diversity because the Court should consider Chase a citizen of New York, rather than Ohio, on the basis that it is an "alter ego" of its parent company, JPMorgan Chase & Co. ("Chase & Co."),[5] which is a New York citizen. (Mot. to Remand at 11, 15–16.) Chase asserts that, as a national banking association, it is a citizen of Ohio under Second Circuit precedent and is thus diverse from Beck, a citizen of New York. (Opp'n at 8, 8 n.4.) Chase also argues against imputing the New York citizenship of Chase & Co. to Chase on the basis that Chase & Co. is a financial holding company that is legally separate from its subsidiary Chase, that these two

---

[5] Beck's brief repeatedly refers to "JP Morgan Chase Bank Co." as the parent company of Defendant Chase, but there is no current institution with such a name. (*See e.g.*, Mot. to Remand at 13, 16; *see also* Opp'n at 13 n.6.) At other points in its brief, Beck refers to "JPMorgan Chase & Co.," which is the holding company of JPMorgan Chase Bank, N.A. (*See e.g.*, Mot. to Remand at 4; *see also* Opp'n at 3; Opp'n, Ex. E at 46, ECF No. 16-6.)

entities have separate corporate structures, and that neither is an alter ego of the other. (Opp'n at 3.)

    A.  <u>Legal Standard</u>

Diversity jurisdiction under Section 1332(a) requires complete diversity among the plaintiffs and defendants. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020); *see also Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) ("Diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships.") (citations omitted). "The party seeking to invoke diversity jurisdiction under 28 U.S.C. § 1332(a) bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Powell v. Ocwen Loan Servicing, LLC*, No. 23-421, 2024 WL 763406, at *2 (2d Cir. Feb. 26, 2024) (citing *Herrick Co.*, 251 F.3d at 322–32) (brackets omitted). Diversity of the parties must be established by a preponderance of the evidence. *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 56 n.3 (2d Cir. 2019). "In cases removed to federal court from state court on the basis of diversity jurisdiction, diversity of citizenship need be established only at the time of removal, and not at the time that the initial pleading was filed in state court." *Wright v. Musanti*, 887 F.3d 577, 585 (2d Cir. 2018).

For the purposes of diversity jurisdiction, an individual party's citizenship depends on its domicile, which "is the place where that individual has a true, fixed home and principal establishment, and to which, whenever that person is absent from the jurisdiction, he or she has the intention of returning." 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure ("Wright & Miller") § 3612 (3d ed. 2021); *Van Buskirk*, 935 F.3d at 53. In order to determine an individual's domicile, courts consider factors including:

    current residence; voting registration; driver's license and automobile registration;
    location of brokerage and bank accounts; membership in fraternal organizations,

> churches, and other associations; places of employment or business; . . . payment of taxes; . . . whether a person owns or rents his place of residence; the nature of the residence (i.e., how permanent the living arrangement appears); . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Lever v. Lyons*, No. 16CV5130MKBSJB, 2021 WL 302648, at *7 (E.D.N.Y. Jan. 28, 2021) (citations omitted); *see also Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he determination of domicile considers factors such as voting, taxes, property, bank accounts, places of business or employment.") (citation omitted).

"[A] corporation is considered a citizen of the state in which it is incorporated and the state of its principal place of business." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012). A corporation's principal place of business under Section 1332(a) is the place where the corporation's officers direct, control, and coordinate the corporation's activities, which "should normally be the place where the corporation maintains its headquarters." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 218 (2d Cir. 2016) (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010)).

The citizenship of a national bank, however, is not determined through the default rule for corporations. Under 28 U.S.C. § 1348 ("Section 1348"), national banks are "citizens of the States in which they are respectively located." In *Wachovia Bank v. Schmidt*, the Supreme Court interpreted Section 1348 and held that for diversity jurisdiction purposes, a national bank is "located" in the state designated in its articles of association as the locus of its main office—not in every state in which the bank has a branch office. 546 U.S. 303, 307 (2006); *see also OneWest Bank*, 827 F.3d at 218. The Supreme Court did not resolve, however, the question of whether a national bank is also a citizen of the state of its principal place of business. *Wachovia Bank*, 546 U.S. at 307; *see also OneWest Bank*, 827 F.3d at 218. The Second Circuit in *OneWest Bank* joined other circuit courts in holding that under Section 1348, a national bank "is a citizen *only*

of the state listed in its articles of association as its main office" for the purposes of diversity

jurisdiction. *OneWest Bank*, 827 F.3d at 219 (emphasis supplied). It reasoned that the Supreme

Court's decision in *Wachovia Bank* did not "conclusively resolve whether a national bank is a

citizen of the state in which it has its principal place of business," but "did provide some

indication that, for diversity purposes, a national bank's citizenship should be limited to the

location of its main office." *Id.* at 219 (citing *Wachovia Bank*, 546 U.S. at 307).[6] The Second

Circuit found this rule to be consistent with the statutory history and construction of Section

1348. *OneWest Bank*, 827 F.3d at 219–220.

　　In *OneWest Bank*, the Second Circuit did, however, also adopt a rule "well established in

other circuits[,] that a subsidiary corporation has its own principal place of business for purposes

of diversity of citizenship jurisdiction, unless it is merely an alter ego or agent of the parent

corporation." *OneWest Bank*, 827 F.3d at 222 (citing Wright & Miller § 3625) (quotation marks

omitted). It explained that "when formal separation is maintained between a corporate parent and

its corporate subsidiary, federal court jurisdiction over the subsidiary is determined by that

corporation's citizenship, not the citizenship of the parent." *Id.* at 222 (citation omitted). In that

case, no party argued that OneWest Bank, a national bank, was an alter ego or agent of its parent

company; rather, the Second Circuit rejected the defendant's argument that the national bank's

citizenship should be determined based on the location of the headquarters of the entity that was

in the process of purchasing OneWest Bank's parent company when the complaint was filed. *Id.*

at 221–22. While the disposition of *OneWest Bank* did not turn on the application of the alter ego

---

[6] The Supreme Court reasoned in *Wachovia Bank* that "[w]ere we to hold . . . that a national bank
is additionally a citizen of every State in which it has established a branch, the access of a
[national] bank to a federal forum would be drastically curtailed . . . ." *Wachovia Bank*, 456 U.S.
at 307.

theory, the Second Circuit nevertheless recognized that facts demonstrating a lack of "formal separation" between a subsidiary and its parent company could permit a court to determine that the national bank is a citizen of the same state(s) as its parent company. *Id.*

"As a general rule, a separately incorporated entity is . . . considered to have its own principal place of business." *Abdullah v. Travelers Ins. Co.*, No. 13CV07825 LAK DF, 2014 WL 6807932, at *7 (S.D.N.Y. Oct. 28, 2014), *objections overruled*, No. 13-CV-7825 LAK, 2014 WL 6807219 (S.D.N.Y. Dec. 3, 2014) (quotation marks omitted). A plaintiff seeking to remand an action to state court bears the burden of producing facts that establish diversity is lacking on the basis that a defendant national bank is a mere alter ego of its parent and thereby assumes the parent's non-diverse citizenship. *See id.* ("A plaintiff seeking remand may rebut the presumption of separateness by demonstrating that a subsidiary is, in fact, a mere alter ego of its parents . . . .") (quotation marks omitted); *O'Donnell v. Club Mediterranee S.A.*, No. 05-CV-610 (ARR), 2008 WL 794975, at *10 (E.D.N.Y. Mar. 24, 2008) (declining to find that two corporations were merely alter egos for the purposes of diversity jurisdiction where plaintiff failed to "rebut the presumption that each separately incorporated entity has its own principal place of business"); *see also Powers v. Fox Television Stations*, 907 F. Supp. 719, 722 (S.D.N.Y. 1996) ("Plaintiff . . . bear[s] the burden of producing facts sufficient to support its assertion that Defendant [corporation] is merely an alter ego of its New York parents" for the purposes of assessing diversity jurisdiction.).

Courts in the Second Circuit consider ten factors set forth in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.* to determine whether a corporation assumes the citizenship of its parent or subsidiary because it is the mere alter ego of that entity:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of

> corporate records and the like, (2) inadequate capitalization, (3) whether funds are
> put in and taken out of the corporation for personal rather than corporate
> purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common
> office space, address and telephone numbers of corporate entities, (6) the amount
> of business discretion displayed by the allegedly dominated corporation, (7)
> whether the related corporations deal with the dominated corporation at arms
> length, (8) whether the corporations are treated as independent profit centers, (9)
> the payment or guarantee of debts of the dominated corporation by other
> corporations in the group, and (10) whether the corporation in question had
> property that was used by other of the corporations as if it were its own.

*O'Donnell*, 2008 WL 794975, at *10 (citing *Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*, 933 F. 2d 131, 139 (2d Cir. 1991)); *see also Berkshire Life Ins. Co. of Am. v. Hagerman*, No. 09-CV-2037 (ILG), 2010 WL 2771839, at *3 (E.D.N.Y. July 13, 2010) (applying the *Passalacqua* factors to determine whether a subsidiary corporation is an alter ego of its parent corporation for the purposes of diversity jurisdiction); *Abdullah*, 2014 WL 6807932, at *7 (same); *Incredible Invs. Ltd. v. Parlato*, No. 09-CV-00576(S)(M), 2010 WL 11546025, at *4 (W.D.N.Y. July 15, 2010) (same); *Matsumura v. Benihana Nat. Corp.*, No. 06 CIV. 7609 (NRB), 2007 WL 1489758, at *6 (S.D.N.Y. May 21, 2007) (same); *Powers*, 907 F. Supp. at 723–24 (same).[7]

Courts consider "the totality of the facts, and no one factor is dispositive." *O'Donnell*, 2008 WL 794975, at *10 (citing *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1053 (2d Cir. 1997)). While the party advancing an alter ego theory of jurisdiction is not required to

---

[7] The Second Circuit's decision in *Passalacqua* appears to draw the ten factors identified as relevant to an assessment of the alter ego theory from New York law, although it does not explicitly say so. *See Passalacqua*, 933 F.2d at 139. Rather, the Second Circuit identified the factors "that would tend to show that [a party] was a dominated corporation" and cited, in support, a law review article that discusses New York law and two federal district court decisions, which rely on New York law. *Id.* (citing Barber, *Piercing the Corporate Veil*, 17 Willamette L. Rev. 371, 398 (1981); *Dir.'s Guild of America v. Garrison Prod.*, 733 F. Supp. 755, 760–61 (S.D.N.Y. 1990); *United States Barite Corp. v. M.V. Haris*, 534 F. Supp. 328, 330 (S.D.N.Y. 1982)).

demonstrate that all ten factors weigh in favor of an alter ego finding, courts have found that a showing of three or fewer of the ten *Passalacqua* factors is insufficient. *See O'Donnell*, 2008 WL 794975, at *10 (demonstrating only *Passalacqua* factors four and five does not overcome the presumption that a subsidiary is separate from its parent corporation for diversity jurisdiction purposes); *Powers*, 907 F. Supp. at 723 (demonstrating three of the ten *Passalacqua* factors is insufficient); *Matsumara*, 2007 WL 1489758, at *6 (same). At least one court in the Second Circuit has noted that this jurisdictional alter ego analysis is distinct from the analysis courts use to determine whether to "pierce the corporate veil for the purposes of imposing liability upon a parent for the acts or agreements of its subsidiary . . . ." *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003) (quotation marks omitted).

    B. <u>Application</u>

Applying these principles to this action, it is undisputed that: (1) Chase bears the burden of establishing diversity jurisdiction because it removed this action from New York state court, *Abbo-Bradley*, 73 F.4th at 148; (2) the amount in controversy in this case exceeds $75,000 because Beck has alleged monetary damages in the amount of $77,800, compensatory and punitive damages in the amount of $50,000 for Beck's pain and suffering, and legal fees and costs (Am. Compl. at 9); (3) Plaintiff Beck is domiciled in New York, as demonstrated by Beck's continuous residence in New York since 2001, her New York driver's license, and her registration to vote in New York (Kandel Decl. ¶¶ 3–9; *see also* Kandel Decl. Exs. A–C);[8] (4) the appropriate date on which to apply the relevant citizenship test to Defendant Chase is October 11, 2023, when Chase removed this case from state court, *Wright*, 887 F.3d at 585; and

___
[8] Beck does not contest that she is domiciled in New York. Indeed, she concedes that she is a New York citizen by arguing that Chase is a New York citizen and that, accordingly, there is no diversity of citizenship between the parties. (*See* Mot. to Remand at 4.)

(5) on that date, Chase was a national bank with its main office in Columbus, Ohio, as set forth

in its articles of association (Opp'n, Ex. D, ECF No. 16-5). Accordingly, under Section 1348 and

*OneWest Bank*, Chase is a citizen of Ohio for the purpose of assessing diversity jurisdiction

under Section 1332(a), unless Beck has produced sufficient evidence to show that Chase is an

alter ego of Chase & Co. and therefore assumes the latter's New York citizenship. *See OneWest*

*Bank*, 827 F.3d at 219, 222.

     Although numerous courts in the Second Circuit have applied *OneWest Bank* to conclude

that Chase is only a citizen of Ohio, none of those courts considered whether Chase is a New

York citizen based on the theory that it is in fact an alter ego of New York citizen Chase & Co.

*See Blackman v. JPMorgan Chase, N.A.*, No. 20CV5539RPKLB, 2022 WL 970729, at *5

(E.D.N.Y. Mar. 31, 2022) (concluding that "[b]ecause Chase is a national banking association, it

is a citizen of Ohio" and collecting cases, but not addressing the alter ego theory); *Zaidi v. JP*

*Morgan Chase Bank, N.A.*, No. 219CV1080DRHARL, 2019 WL 8989548, at *3 (E.D.N.Y. Aug.

2, 2019) (same); *Logerfo v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19CV02019HGAYS, 2023

WL 8935018, at *7 (E.D.N.Y. Dec. 27, 2023) (same). Beck does not identify any federal court in

the country that has considered this question and found Chase to be a New York citizen on the

basis that it is an alter ego of its parent Chase & Co., and the Court is aware of none.

     Applying the *Passalacqua* factors to the facts in the record, Beck has at best established

that only factor four—a showing that there is "overlap in ownership, officers, directors, and

personnel" between the party and its parent company, 933 F.2d at 139—weighs in favor of

finding Chase to be an alter ego of Chase & Co. based on the companies' 2023 and 2024 public

filings and SEC forms. (*See* Reply, Ex. 1 at 36 (providing a list of officers common to both

entities and a list of Chase officers alone); *see also id.*, Ex. 2 at 36.)[9] But "[p]arents and subsidiaries frequently have overlapping boards of directors while maintaining separate business operations." *Berkshire Life Ins. Co. of Am. v. Hagerman*, No. 09-CV-2037 (ILG), 2010 WL 2771839, at *4 (E.D.N.Y. July 13, 2010) (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995)). Accordingly, Beck's demonstration of factor four is, on its own, insufficient to establish that Chase is an alter ego of Chase & Co. *See Powers*, 907 F. Supp. at 723 (plaintiff failed to establish that a subsidiary was an alter ego of its parent even where it could establish that the two entities "ha[d] some common directors" because the plaintiff could only establish three of the seven factors); *Matsumura*, 2007 WL 1489758, at *7 (plaintiff failed to establish that a holding company and its subsidiaries were alter egos even where "there [was] significant overlap, if not identity, in the officers" between the entities); *see also O'Donnell*, 2008 WL 794975, at *10 (same).

Beck has not identified any evidence showing that any of the remaining nine *Passalacqua* factors weigh in favor of concluding that Chase was "dominated" by Chase & Co. at the time the complaint was filed. *O'Donnell*, 2008 WL 794975, at *10 (citing *Passalacqua*, 933 F. 2d at 139). On reply, Beck attempts to show that *Passalacqua* factor five weighs in favor

---

[9] Beck raised this argument and submitted this new evidence—the 2023 and 2024 public filings and SEC forms for Chase and Chase & Co.—for the first time on its Reply. (*See* Reply at 3; ECF Nos. 18-1–18-5.) This is improper. "It is well-established that new arguments may not be made in a reply brief." *Madorskaya v. Frontline Asset Strategies, LLC*, No. 19CV895PKCRER, 2021 WL 3884177, at *18 (E.D.N.Y. Aug. 31, 2021) (citing *Ernst Haas Studio, Inc. v. Palm Press, Inc.*, 164 F.3d 110, 112 (2d Cir. 2000)) (quotation marks omitted). Further, it is "plainly improper to submit on reply evidentiary information that was available to the moving party at the time that it filed its motion and that is necessary in order for that party to meet its burden." *Id.* (citations omitted). These publicly filed documents Beck has submitted were available at the time Beck filed her Motion. Even considering these materials, however, Beck has failed to meet her burden to establish that Chase is the alter ego of Chase & Co. for purposes of diversity jurisdiction.

of an alter ego finding. *See Passalacqua*, 933 F.2d at 139 (considering whether the corporate entities share "common office space, address and telephone numbers"). Beck argues that Chase's SEC filings have an Ohio address but a telephone number with a New York City area code and that "all of Defendant's SEC filings are signed on behalf of Chase by individuals located in New York and who are associated with a separate subsidiary of JPMorgan Chase Bank & Co., . . . JPMorgan Securities, LLC." (Reply Supp. Remand at 3.). Beck has not provided any evidence, however, that Chase's New York City phone number is the same as Chase & Co.'s phone number, or that the two companies share any office space. Beck therefore fails to show that the fifth *Passalacqua* factor weighs in favor of finding that Chase is an alter ego of Chase & Co. for diversity jurisdiction purposes.

The remainder of Beck's evidence and arguments fail to show that Chase is the alter ego of Chase & Co. for diversity jurisdiction purposes. First, in her moving brief, Beck asserts that "record[s]" establish that "the corporate and organizational history of [Chase] mirrors the corporate and organizational activity of JPMorgan Chase Bank exactly, from its initial incorporation as Chemical Bank & Trust Company in 1824" and that, on November 13, 2004, Chase changed its name with the FDIC "from JPMorgan Chase Bank to JPMorgan Chase Bank, National Association." (Mot. to Remand at 15–16.)[10] The institutional history and prior name of

---

[10] Beck attached to the Motion a screenshot of the Federal Deposit Insurance Corporation website showing name changes and other institutional history for Chase. (Mot. to Remand, Ex. 3, ECF No. 15-3.) The website states that on November 10, 2001, the institution's name was changed from "The Chase Manhattan Bank" to "JPMorgan Chase Bank." (*Id.*) It also shows that on November 13, 2004, after the bank class changed to "N," the institution's name was changed to "JPMorgan Chase Bank, National Association." (*Id.*) Beck additionally attached to the Motion a document titled "Notice to Interested Persons," which states that on January 6, 2005, Chase & Co. and one of its subsidiaries, JPMorgan Securities, filed a request seeking final authorization with the Department of Labor for the purchase or sale of securities in the context of a portfolio liquidation or restructuring. (Mot. to Remand, Ex. 4 at 1, ECF No. 15-4.) The notice states that

a corporation is not a factor courts consider under *Passalacqua*, and Beck does not explain how this institutional history in any way demonstrates that Chase is "dominated" by Chase & Co. Beck at one point refers to the fact that Chase's prior name was "JPMorgan Chase Bank co." (*Id.* at 16.) To the extent that Beck is arguing that the entity "JPMorgan Chase Bank" is the same entity as Chase's current parent corporation, Chase & Co., that argument is not supported by any evidence in the record.

Second, Beck argues that "[v]arious SEC filings refer to JPMorgan Chase Bank, N.A. as the same entity as JPMorgan Chase Bank, N.A." (Mot. to Remand at 16.) The Court presumes this argument contains a typographical error because the double reference to "JPMorgan Chase Bank, N.A." does not make sense. The Court is unable to evaluate Beck's intended argument because Beck does not identify which SEC filings make any such references.

Third, Beck asserts that Chase's "customers most definitely are not aware that the bank they are using to maintain and secure their life savings are in fact solely citizens of the State of Ohio." (*Id.*) Whether or not customers are aware of Chase's citizenship—an assertion for which Beck provides no evidence—is not a factor courts consider in the *Passalacqua* test to determine whether a subsidiary corporation is an alter ego of its parent. Further, the Supreme Court has dispelled any such argument in determining "unequivocally that a national bank is 'located,' for diversity jurisdiction purposes, in the state designated in its articles of association as the locus of its main office—not in every state in which it has branch offices." *OneWest Bank*, 827 F.3d at 218 (citing *Wachovia Bank*, 546 U.S. at 307).

---

Chase & Co is a financial holding company and that its principal bank subsidiaries include Chase. (*Id.* at 11.) Beck highlighted the line of the document that parenthetically defines Chase as "formerly known as JPMorgan Chase Bank, a New York State banking corporation." (*Id.*)

Accordingly, Beck has failed to rebut the presumption that Chase's citizenship is determined based on its own status, rather than the citizenship of its legally distinct parent company, Chase & Co. *See Powers*, 907 F. Supp. at 723; *O'Donnell*, 2008 WL 794975, at *10; *Matsumara*, 2007 WL 1489758, at *6.

For the aforementioned reasons, at the time of removal, there was diversity of citizenship between Beck and Chase because: (1) Beck was a citizen of New York; (2) under Section 1348 and *OneWest Bank*, Chase was a national bank with Ohio citizenship; and (3) Beck had voluntarily dismissed with prejudice the only non-diverse party, Metropolitan, in the state court action prior to removal. Accordingly, this Court had diversity jurisdiction over this action pursuant to Section 1332(a) at the time of removal because there was complete diversity between Chase and Beck and because Beck seeks $127,800 in damages, which exceeds the jurisdictional threshold of $75,000 for diversity actions. (*See* Am. Compl. at 9.) Chase thus properly removed this action pursuant to 28 U.S.C. § 1441(a). This Court therefore denies Beck's Motion to Remand. *See Parnoff*, 796 F. App'x at 9 ("When a case is properly removed based on diversity jurisdiction, the district court may not remand it, as diversity jurisdiction is not discretionary.") (citation omitted).[11]

## III.    Attorney Fees and Costs

Finally, Beck requests attorney costs and fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." (Mot. to Remand at 17.) Because the Court denies the Motion to Remand, the Court also denies Beck's request for attorney fees and costs.

---

[11] Beck does not dispute that removal was timely pursuant to 28 U.S.C. § 1446(b)(3).

IV.     **Conclusion**

For the reasons set forth above, Beck's Motion to Remand (ECF No. 15) is denied.

**CONCLUSION**

Dated: Central Islip, New York
June 3, 2024

                              _/s/ Nusrat J. Choudhury_
                              NUSRAT J. CHOUDHURY
                              United States District Judge